## CROW vs. THE STATE.

1. Where a person, residing in one county, with the intent to convert a slave to his own use, entices or inveigles him from the service of his owner in another county, and thereby induces him to come into the county of such person's residence, the offence is complete in the latter county and he may be there indicted.

Crow v. The State.

ERROR to the Circuit Court of Butler. Tried before the Hon. Geo. Goldthwaite.

THE plaintiff in error was indicted in the Circuit Court of Butler for inveigling, stealing, carrying and enticing away a slave, by the name of Cary, the property of one John J. Moorer, with a view to convert said slave to his own use.

By the bill of exceptions it appears that the prisoner resided in Butler county, and that the owner of the slave had a plantation in Lowndes, on which the slave was employed; that the slave had a wife in Butler county, about a mile and a half from the prisoner's residence; that the nearest route to Stockton from his master's plantation is through a portion of Butler county, and that about the 13th September 1849, the slave was seen on a Stockton steamboat at the wharf in Mobile, where he was taken up by a city officer, who found in his possession a pass dated Sept. 9th, 1849, and a letter directed to one Lesesne, both signed in the name of R. Readmond, but which there was evidence conducing to show were in the handwriting of the prisoner. The latter instructed Lesesne to hire the slave out until further orders, for account of the writer, who spoke of the slave as his property. The court charged the jury that to convict the prisoner, they must be satisfied that the offence was committed in the county of Butler; that if the prisoner inveigled or enticed away the slave from his owner with the intent charged in the indictment, the slave being at the time in Lowndes and not coming into Butler county under the influence of such enticement or inveiglement, he could not be convicted; but that if the prisoner, being in Butler county, enticed or inveigled the slave away from his owner, with the intent charged, and the slave, under the influence of, or in pursuance of such enticement or inveiglement, came into and remained in Butler county, although he may have first left his owner in Lowndes county, the prisoner could be indicted in Butler county. The court further charged the jury that if the slave had runaway from his owner in Lowndes, without being enticed or inveigled away by the prisoner, and whilst in Butler county, and so runaway, was enticed or inveigled away by the prisoner, with the intent charged, he could be convicted under the indictment in Butler county. To these several charges the prisoner's counsel excepted and now assign them as error.

ELMORE & YANCEY, for the plaintiff in error:

1. The offence charged in the indictment was unknown to. the common law, and was created by statute law.—Clay's Dig. 419, § 18; Mooney v. The State, 8 Ala. 328; Williams v. The State, 15 ib. 263. It is "essentially distinct from larceny at common law."—Mooney v. The State, 8 Ala. 333.

2. If an offence is made larceny by statute, which was not larceny at common law, it is only indictable in the county in which it was originally committed.—Archbold Cr. Pl., p. 22 ; Rex v. Millar, 7 Carr & Payne, 665.

3. This offence is consummated, when by promises and persuasions, the slave is induced to leave his master's service, whether the person operating on his mind is present or not.— Mooney v. The State, 8 Ala. 333. It consists not in actual manucaption of the slave, nor in the fraudulent taking, with intent to convert the slave to his own use, but in the influence, which induces the slave to quit his master's service.—Mooney v. The State, 8 Ala. 333.

4. At common law, larceny is indictable in any county in which the party is found in possession of the property, because the continuance of the trespass is a new caption and asportation.—2 Russ. on Crimes, 173. But this reason does not apply to this offence, which does not consist of the caption, &c., but in the influence which causes the slave to leave his master's service.—Mooney v. The State, 8 Ala. 333.

ATTORNEY GENERAL, for the State:

1. In all simple larcenies, the party may be indicted in any county, through which the goods are carried. The venue is ambulatory, for the reason that every moment he keeps them, it is a *fresh caption*—it is one continuous act, and unlike the case where a man stands in one county and kills another in a different county.—Archb. 24; Roscoe, 521; 2 Russ. 174.

2. Is the inveigling or enticing away a slave, with intent to convert him to one's use, larceny? Inveigle and entice have been decided to be offences of the same grade of larceny, and may be embraced in the same count.—The State v. Mooney, 8 Ala. 333. If they may be embraced in the same count, they cannot be distinct offences; and must be governed by the same rules as to ambulatory venue.—Archb. 59.

3. To inveigle or entice supplies the place of asportation in larceny, at the common law, "as the slave, an intelligent being, could, by his co-operation, produce the same result as an actual taking."

4. When was the inveiglement or enticement complete? The defendant stands in Butler county and puts his machinery of inveiglement to work upon a slave in Lowndes county. If the inveiglement was not complete until this slave arrived in Butler county, certainly the venue might be laid there. This was a matter for the jury, and the court did not undertake to decide it.

5. The last charge involves the question whether or not a runaway slave is the subject of larceny. If one lose goods and another find them, and knows the owner, or has means of ascertaining, and converts them, it is larceny. The loser has constructive possession.—Roscoe, 475; Randal v. The State, 4 S. & M. 350.

PARSONS, J.—The charge relative to the venue was right, if the crime, as committed in Butler, was complete,—unless erroneous in consequence of what may have occurred in Lowndes. The statute is, that "Every person who shall inveigle, steal, carry or entice away, any such slave, with a view to convert such slave to his own use, or the use of any other person, or to enable such slave to reach some other State, or country, where such slave may enjoy freedom, such person shall, on conviction, be punished by confinement in the penitentiary, not less than ten years."—Clay's Dig. 419, § 18. In Mooney v. The State, 8 Ala. 328, it was held upon this statute, that the offence of inveigling, or enticing away a slave, is consummated when the slave, by promises, or persuasion, is induced to quit his master's service, with the intent to escape from bondage as a slave, whether the person so operating on the mind and will of the slave is, or is not present when the determination to escape is manifested, by the act of leaving the master's service, or whether he is, or is not sufficiently near to aid in the escape if necessary. The prisoner resided in Butler, and in his vicinity, in that county, the slave had a wife, but belonged himself to a plantation in Lowndes. In the first place, he escaped from Lowndes, but the evidence conduced to prove

that he was enticed and inveigled into Butler by the prisoner, and under that influence afterwards came into Butler and went from there to Mobile under the prisoner's direction. In the view we take of the question, it is not indispensable to determine whether, supposing the prisoner not to have been in Lowndes at all, he could have been convicted in that county, upon the facts stated. What he did was in Butler, but it produced an escape in Lowndes, and escape, in general, is the consummation of the crime, although the prisoner was not present. For the purposes of this case it is conceded that the prisoner could have been convicted in Lowndes. It is said by Hawkins, bk. 2, ch. 29, sec. 11, " I take it to be a settled rule, that wherever a man procures a felony to be committed, and is absent at the time when it is committed, and no other person but himself can be adjudged a principal in it, he shall be esteemed as much a principal as if he had been present," &c. The slave was irresponsible and could not be the principal. And in 1 Chitty's Crim. Law, 90, it is said, "And where a person, by means of an innocent agent, procures a felony to be done in another county, he may be indicted there, though not personally present;" and he gives as an instance, the case of one person sending a threatening letter into another county, by another person who is ignorant of its contents; and the offender may be indicted in the county to which the letter was sent.—1 Leach, 142. Then, to concede that the prisoner had thus committed a crime in Lowndes, for which he might have been indicted and convicted in that county, the question is whether his acts in Butler, which the evidence conduced to prove, constituted a crime for which he could be convicted there? As to this question, our statutes and the case of Mooney v. The State are entirely silent. We must decide it, therefore, in view of the nature of the crime and of those rules and principles of the common law which are most analogous. In Rex v. Millar, 7 C. & P. 665, the case was—"A. was indicted at common law for simple larceny, in stealing in Middlesex a quantity of lead. It appeared that the lead was stolen from the roof of the church of Iver, in Buckinghamshire. The prisoner was indicted at the central criminal court, which has jurisdiction in Middlesex, but not in Buckinghamshire:—Held, that he could not be convicted there, on the ground that the original taking not being a larceny, but created by statute a felony, the

subsequent possession could not be considered a larceny.'' This case was relied upon by the prisoner's counsel in the case before us, but his argument was much more in point than his case, for there the court thought that the original grade and nature of the offence could not be altered by the subsequent possession, and so no larceny; but that is not the case before us. The indictment in the present case is upon the statute, and it states the facts and circumstances of a crime which bring it within the statute, and avers that it was committed in Butler. The general common law rule, that the venue must be laid in the county where the offence is alleged to have been committed, is fully admitted. But that rule is complied with, if the crime was complete and perpetrated entirely within Butler. In an indictment for a libel, if the defendant has once authorised the publication, he is guilty of a publication in whatever county the libel is afterwards in consequence published, and he may be indicted accordingly.—7 East. 65, 3 Pick. 304. And if a party writes and composes a libel in one county, with intent to publish, and afterwards publishes it in another, he may be indicted in either. 1 Chit. Crim. Law, 190. At common law, if a party steal goods in the county of A. and carry them into the county of B., he may be indicted of larceny in the latter county. This does not contradict the general rule, but is founded upon the principle that the possession of the stolen goods by the thief is a larceny in every county, into which he carries them; because the legal possession still remaining in the true owner, every moment's continuance of the trespass and felony amounts, in legal consideration, to a new caption and asportation.—1 Chit. Cr. Law, 177.

The statute, (3 Hen. 7, c. 2,) made it felony in any misdoer to take away any maid, wife, or widow of substance, &c. against her will, to marry or to defile her.—1 Hale, 659. In the case of Fulwood, Cro. Car. 488, the prisoners were indicted upon that statute for taking away, in the county of Surry, one Sarah Cox, forcibly and against her will, and alleging that one of the defendants married her in Surry, but the validity of the marriage was denied by the counsel of the prisoners. It appeared on the trial that she was taken away forcibly in the county of Middlesex, but married in Surry. And it was contended for the prisoners that as the force was in Middlesex, but not con-

tinued in Surry, there was no crime within the statute. But the court held that if the jury found that she was taken with force in Middlesex, and brought into Surry, it was a continuing force, and a forcible caption in Surry, and an offence within the statute. We have, however, conceded, for the purposes of the defence in this case, that the prisoner's crime was complete in Lowndes, whereas that of Fulwood was not complete in Middlesex, and so, as yet, there is a difference between that case and this. But this distinction is of the less force from the fact that at the time of the trial of Fulwood it had not been well settled that the fact of marriage or of defiling was necessary to consummate the crime; and Croke, one of the judges, thought they were not, and Bramston, another, doubted. If Croke's opinion and Bramston's doubts were well founded, Fulwood's crime was complete in Middlesex and he might have been indicted there; but those judges, nevertheless, and all the others, held that the offence was indictable in Surry. We think the prisoner was properly indicted in Butler, and if he may have been indicted in Lowndes, that does not alter the case. This is the only question that struck us, upon the argument, as doubtful, and it is probably the question on which the prisoner's counsel had most confidence. We have, however, examined the record in reference to the other points made by him on the argument, and his authorities, and we feel constrained to affirm the judgment.